ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL I

| ANESTESIA DEL NORTE, PSC, Recurrente, v. COMISIONADO DE SEGUROS DE PUERTO RICO, Recurrida. | TA2026RA00062 | REVISIÓN procedente de la Oficina del Comisionado de Seguros de Puerto Rico. Caso núm.: OE-2025-22. Sobre: impugnación de denegatoria parcial de solicitud de investigación; investigación núm. I-26522-2024. |
| --- | --- | --- |

Panel integrado por su presidente, el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio.

Romero García, jueza ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 25 de marzo de 2026.

La controversia en este recurso trata de la aplicación de ciertas disposiciones del *Código de Seguros de Puerto Rico* (Código de Seguros) y del *Código de Seguros de Salud de Puerto Rico* (Código de Seguros de Salud), y de la jurisdicción que ostenta la Oficina del Comisionado de Seguros de Puerto Rico (OCS) para atender una solicitud de investigación instada ante sí por la parte recurrente, Anestesia del Norte, PSC (Anestesia del Norte).

Anestesia del Norte insiste en que, conforme a lo dispuesto en *MCS Advantage v. Fossas Blanco et al.*, 211 DPR 135 (2023), la jurisdicción primaria exclusiva para atender la controversia suscitada entre ella y su asegurador (Triple-S Salud, Inc.) y la organización (Triple-S Advantage; conjuntamente, Triple-S) la ostenta la Comisionada de Seguros de Puerto Rico (Comisionada de Seguros), conforme dispone el Capítulo 30 del Código de Seguros[1].

---

[1] 26 LPRA sec. 3001-3008.

Por su parte, la Comisionada de Seguros arguye que el origen de la controversia entre Anestesia del Norte y Triple-S no trata del pago puntual de las facturas por servicios prestados, cubiertos por el Capítulo 30 del Código de Seguros, sino por virtud de la auditoría de las reclamaciones presentadas por Anestesia del Norte a Triple-S, y pagadas por esta a Anestesia del Norte, la cual se rige por el Capítulo 6 del Código de Seguros de Salud[2].

Examinados el expediente y la *Resolución* final objeto de revisión a la luz del derecho aplicable, concluimos que le asiste la razón a la Comisionada de Seguros.

I

Anestesia del Norte es un proveedor debidamente autorizado para prestar o proveer servicios de cuidado de salud en Puerto Rico. En el 2003, el recurrente suscribió un contrato con Triple-S para participar como proveedor de salud conforme a las cubiertas que ofrece dicha aseguradora[3]. Posteriormente, en el 2012, la recurrente comenzó a participar como proveedor de salud de la cubierta de salud ofrecida por la misma aseguradora bajo el Plan Medicare Advantage[4].

El 7 de julio de 2022, Triple-S cursó a Anestesia del Norte una misiva mediante la cual le notificó que, debido a su perfil de utilización, realizaría una auditoría de las reclamaciones mediante las cuales la recurrente había facturado ciertos servicios prestados a los beneficiarios del Plan Comercial y de los planes médicos que forman parte de varios programas federales de salud[5], a saber: *Medicaid*, *Medicare Advantage*, *FEP*, *Home*, *Host* o Empleados Federales (Programas Federales)[6].

---

[2] 26 LPRA sec. 9081-9091.

[3] Apéndice del recurso, SUMAC TA, entrada núm. 6.

[4] *Íd.*, entrada núm. 8.

[5] El periodo de auditoría para el Plan Comercial comprendió desde el 1 de diciembre de 2021, hasta el 31 de mayo de 2022, mientras que el de los Programas Federales comprendió desde el 1 de junio de 2019, hasta el 31 de mayo de 2022.

[6] Apéndice del recurso, SUMAC TA, entrada núm. 20, págs. 15-16.

El 29 de marzo de 2023, Triple-S notificó a la recurrente los hallazgos de la auditoría[7], los cuales consistían en ciertas discrepancias e incongruencias entre los médicos que prestaban los servicios y los médicos que aparecían facturando el servicio prestado[8]; ello, en contravención de varias disposiciones contractuales[9]. A base de los referidos hallazgos, Triple-S determinó que había realizado el sobrepago de una suma ascendente a $1,473,1634.06, por concepto de las reclamaciones conjuntas del Plan Comercial y de los Programas Federales.

El 28 de septiembre de 2023, Triple-S cursó a Anestesia del Norte una tercera misiva, a los fines de comunicar, entre otras cosas, su determinación de recobrar los pagos presuntamente efectuados en exceso, según los hallazgos de la auditoría realizada[10]. Además, le apercibió que, de no tomar acción dentro de los próximos sesenta días, su división de finanzas comenzaría a descontar una cantidad de cada pago procesado hasta saldar el sobrepago adeudado.

En desacuerdo con tal determinación, el 27 de octubre de 2023, Anestesia del Norte sometió una *Solicitud de Apelación* ante la División de Disputas Administrativas de Triple-S[11]. No obstante, dicha aseguradora ratificó su determinación de recobro mediante una carta fechada el 15 de diciembre de 2023[12]. En esta última comunicación, Triple-S también le informó que toda apelación sobre alguna determinación que incidiera sobre

---

[7] Apéndice del recurso, SUMAC TA, entrada núm. 10.

[8] En particular, Triple-S señaló que se habían facturado servicios ofrecidos por médicos no participantes de Triple-S, o que eran participantes que no pertenecían al grupo médico de Anestesia del Norte.

[9] En dicha misiva, Triple-S identificó y reprodujo íntegramente las cláusulas contractuales en las cuales basó las discrepancias halladas en su auditoría, presuntamente infringidas por Anestesia del Norte, entre ellas: el Artículo III, inciso 4(a)-(b); el Artículo IV, incisos 1(a)-(c), 2 y 3, y el Artículo IX, incisos 1 y 2.

[10] Apéndice del recurso, SUMAC TA, entrada núm. 11.

[11] *Íd.*, entrada núm. 12.

[12] *Íd.*, entrada núm. 13.

aquellos casos relacionados al Plan de Salud del Gobierno, como Medicaid, debía realizarse ante la Administración de Seguros de Salud (ASES)[13].

Aún inconforme, el 12 de enero de 2024, la recurrente presentó ante la OCS una *Solicitud de Investigación* contra Triple-S, con el propósito de que la referida agencia dejara sin efecto el recobro de $503,695.06[14], correspondientes al supuesto sobrepago en los Programas Federales[15]. Ello, tras aducir que la OCS era el foro con jurisdicción primaria exclusiva para atender su objeción conforme a lo resuelto por el Tribunal Supremo en *MCS Advantage v. Fossas Blanco et al.*, 211 DPR 135 (2023), por presuntamente tratarse del reembolso de reclamaciones no procesables al amparo del Capítulo 30 del Código de Seguros.

El 23 de diciembre de 2024, la OCS remitió a Anestesia del Norte una misiva mediante la cual le informó que no tenía jurisdicción para atender sus objeciones relacionadas al reembolso de las reclamaciones sometidas conforme a los planes de Programas Federales administrados por Triple-S[16]. La agencia recurrida adujo que tales planes se encuentran regulados por la legislación federal, de manera que las agencias federales pertinentes[17] eran quienes ostentaban jurisdicción para intervenir y revisar las determinaciones tomadas por la aseguradora sobre las reclamaciones en dichos planes.

Además, refirió la *Solicitud de Investigación* al Centro de Servicios de Medicare y Medicaid (CMS, por sus siglas en inglés), pues adujo que esta era la entidad gubernamental con facultad para evaluar y tramitar los

---

[13] Surge del expediente que el recurrente posteriormente presentó una solicitud de vista administrativa ante ASES a estos fines. *Véase*, apéndice del recurso, SUMAC TA, entrada núm. 14, pág. 3.

[14] Tal cifra surge luego de restar el sobrepago reclamado por concepto de las reclamaciones relacionadas al programa Medicaid, las cuales fueron objetadas por el recurrente ante ASES.

[15] Apéndice del recurso, SUMAC TA, entrada núm. 14.

[16] *Íd.*, entrada núm. 20, págs. 22-23.

[17] Según lo informado por la OCS, la oficina de reclutamiento o sistema de retiro federal es quien tiene jurisdicción con respecto a los planes de los empleados del gobierno federal, mientras que el Departamento de Trabajo Federal es quien tiene jurisdicción sobre los planes médicos de un grupo auto asegurado, conforme a las disposiciones de la *Ley de Seguridad de Ingresos de Jubilación de los Empleados de 1974*, 29 USC sec. 1001, *et seq.* (ERISA, por sus siglas en inglés).

asuntos relacionados a las controversias planteadas sobre el plan Medicare Advantage[18]. **A pesar de ello, la OCS informó que continuaría con la evaluación de lo solicitado por Anestesia del Norte solo respecto a las reclamaciones del Plan Comercial de Triple-S**.

El 13 de enero de 2025, Anestesia del Norte solicitó a la OCS la celebración de una vista administrativa para dirimir los planteamientos jurisdiccionales esbozados en su última misiva[19]. El 28 de febrero de 2025, foro recurrido reiteró su determinación sobre su falta de jurisdicción[20].

El 12 de marzo de 2025, Anestesia del Norte presentó otro escrito mediante el cual expresó los fundamentos por los que había presentado su solicitud de vista administrativa[21].

Luego de que la OCS autorizara la presentación de ciertas mociones dispositivas y sus respectivas réplicas, la Comisionada de Seguros emitió la *Resolución* final recurrida[22]. En el referido dictamen, la Comisionada confirmó la determinación previa sobre su falta de jurisdicción para intervenir en la objeción de la recurrente. Ello, por tratarse de un recobro que surgió como resultado de una auditoría realizada al amparo del Capítulo 6 del Código de Seguros de Salud, y no regulada por el Capítulo 30 del Código de Seguros. Además, confirmó el referido a la CMS para que dicha agencia federal atendiera los asuntos relacionados al plan Medicare Advantage.

Inconforme, el 12 de febrero de 2026, Anestesia del Norte instó este recurso de revisión y formuló el siguiente señalamiento de error:

> Erró la OCS al decretar que no tiene jurisdicción para atender y resolver la controversia entre Anestesia del Norte y TS sobre si procede o no el reembolso o recobro de reclamaciones pagadas bajo el plan Medicare Advantage y bajo el plan denominado "Otros Programas Federales".

---

[18] Apéndice del recurso, SUMAC TA, entrada núm. 20, pág. 29.

[19] *Íd.*, entrada núm. 15.

[20] *Íd.*, entrada núm. 20, págs. 24-28.

[21] *Íd.*, entrada núm. 16.

[22] *Íd.*, entradas núm. 25 y 26.

Por su parte, el 16 de marzo de 2026, la Comisionada de Seguros compareció, representada por la Oficina del Procurador General de Puerto Rico, y presentó su oposición al recurso.

Con el beneficio de la comparecencia de las partes, resolvemos.

II

A

La norma reiterada es a los efectos de que las decisiones de los organismos administrativos merecen la mayor deferencia judicial, pues son estos los que cuentan con el conocimiento experto de los asuntos que les son encomendados. *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021). Además, al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad de la actuación de la agencia. *González Segarra et al. v. CFSE*, 188 DPR 252, 276 (2013). Debido a que toda sentencia o determinación administrativa está protegida por una presunción de corrección y validez, la parte que acude a este Tribunal de Apelaciones tiene el deber de colocar a este foro en posición de conceder el remedio solicitado. *Morán v. Martí,* 165 DPR 356, 366 (2005).

A su vez, el estándar de revisión judicial en materia de decisiones administrativas se circunscribe a determinar: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hechos de la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo; y, (3) si las conclusiones de derecho fueron correctas. *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010).

Así pues, como norma general, las determinaciones de hechos de organismos y agencias "tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas". *Vélez v. A.R.Pe.*, 167 DPR 684, 693 (2006). Por ello, la revisión judicial ha de limitarse a determinar si la agencia actuó de manera arbitraria, ilegal, irrazonable, o fuera del marco

de los poderes que se le delegaron. *Torres v. Junta Ingenieros*, 161 DPR 696, 708 (2004).

De otra parte, las conclusiones de derecho de las agencias administrativas serán revisables en toda su extensión. *Vázquez, et al. v. DACo*, opinión de 21 de mayo de 2025, 2025 TSPR 56, a la pág. 28, 215 DPR ___; *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 DPR, a la pág. 941. Sin embargo, esto no significa que los tribunales podemos descartar libremente las conclusiones e interpretaciones de la agencia. *Otero v. Toyota*, 163 DPR 716, 729 (2005).

En fin, como ha consignado el Tribunal Supremo de Puerto Rico, la deferencia concedida a las agencias administrativas únicamente cederá cuando: (1) la determinación administrativa no esté basada en evidencia sustancial; (2) el organismo administrativo haya errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) cuando el organismo administrativo actúe arbitraria, irrazonable o ilegalmente, al realizar determinaciones carentes de una base racional; o, (4) cuando la actuación administrativa lesione derechos constitucionales fundamentales. *Super Asphalt v. AFI y otro*, 206 DPR, a la pág. 819, que cita a *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744-745 (2012).

B

La Ley Núm. 104 de 19 de julio de 2002, 26 LPRA sec. 3001-3009, intitulada *Ley para el Pago Puntual de Reclamaciones a Proveedores de Servicios de Salud* (Ley de Pago Puntual), enmendó el Código de Seguros e incorporó a este un nuevo Capítulo 30. El referido estatuto fue promulgado, primordialmente, con el fin de fijarle a las aseguradoras y a las organizaciones de servicios de salud ciertos plazos para que efectúen a favor de los proveedores de servicios de salud los pagos de las reclamaciones que estos últimos someten.

Según su Exposición de Motivos, el Capítulo 30 se añadió con el propósito de propiciar y reglamentar el **pago oportuno** a los proveedores de salud para así promover la estabilidad y la confianza en los servicios ofrecidos y en el sistema de salud del País. La Asamblea Legislativa consignó su preocupación de que los proveedores de salud en la Isla optaran por no prestar sus servicios como participantes de planes de cuidado de salud por, entre otras cosas, la falta de pago por insolvencia económica, por ofertas de pago correspondientes a una cantidad menor de la reclamada o por pagos tardíos de parte de las aseguradoras.

Para lograr su objetivo, el Art. 30.030 del Capítulo 30 del Código de Seguros dispone que un asegurador u organización de servicios de salud tiene la obligación de pagar totalmente la reclamación que le someta oportunamente un proveedor de salud, sea esta o no procesable para pago, dentro del término de treinta (30) días a partir del recibo de la reclamación. 26 LPRA sec. 3003.

Para determinar posteriormente la procesabilidad del pago efectuado, el Art. 30.040 del Capítulo 30 establece que una reclamación es procesable para pago si cumple con los siguientes requisitos:

a) Corresponde a un servicio de salud prestado por un proveedor a una persona asegurada por cuyo servicio está cubierto por un seguro de salud o plan de cuidado de salud del asegurador u organización de servicios de salud al cual se dirige la reclamación;

b) incluye la información completa y correcta requerida por el asegurador u organización de servicios de salud siempre y cuando el asegurador u organización de salud haya notificado al proveedor participante la información requerida, y

c) no hay disputa en cuanto a la cantidad reclamada.

d) constituye una factura limpia o *clean claim*.

26 LPRA sec. 3003.

Ahora bien, según su Exposición de Motivos, la Ley de Pago Puntual también estableció el **procedimiento para objetar las reclamaciones que son sometidas para pago puntual**. Esto, pues una aseguradora cuenta con ciertos términos para notificar si una reclamación es o no procesable,

luego de haber sido pagada al amparo de la referida Ley. 26 LPRA sec. 3005. A su vez, la Ley de Pago Puntual confiere **jurisdicción original** al Comisionado de Seguros para resolver "las controversias que surjan entre proveedores participantes y aseguradores u organizaciones de salud, al amparo de este capítulo". 26 LPRA sec. 3007(c).

De conformidad con lo anterior, la Oficina del Comisionado de Seguros promulgó la Regla 73 a través de su Reglamento Núm. 6559 de 8 de enero de 2003, según enmendado (Regla 73), para preceptuar los procedimientos para el pago puntual de las reclamaciones a los proveedores de servicios de salud. En su Artículo 6, la Regla 73 dispone todo lo concerniente a los reembolsos y a la impugnación de los reembolsos, y los términos para ello. En su parte pertinente a la controversia ante nos, el Art. 6 establece que:

> El Proveedor Participante que objete la solicitud de reembolso deberá agotar el procedimiento interno que haya establecido el Asegurador u Organización de Servicios de Salud antes de acudir ante la Oficina del Comisionado de Seguros para plantear la objeción mediante la solicitud de una investigación. **La parte adversamente afectada por la determinación del Comisionado podrá recurrir al procedimiento adjudicativo a nivel administrativo. Luego, la parte adversamente afectada por el resultado de ese procedimiento administrativo puede recurrir al Tribunal de Apelaciones del Estado Libre Asociado de Puerto Rico en revisión judicial, si así lo desea**.

(Énfasis nuestro).

Asimismo, el Artículo 15 de la Regla 73 reitera los poderes del Comisionado de Seguros **sobre las controversias al amparo de la Ley de Pago Puntual** al disponer que:

> El Comisionado tendrá la facultad y autoridad, según proveen los Artículos 2.030 y 30.080 del Código, para examinar e investigar todas las actividades de sus regulados o de cualquier otra persona, **relacionadas al pago puntual de Reclamaciones por servicios de cuidado de salud y facturación uniforme**, sujetas a las disposiciones de esta Regla y del Código para propósitos de fiscalización de la industria.

(Énfasis nuestro).

Por último, la Oficina del Comisionado de Seguros también promulgó la Carta Normativa Núm. 2010-110-PP, con la finalidad de

delimitar la aplicación del Capítulo 30 del Código de Seguros al pago de reclamaciones por servicios prestados a los beneficiarios del plan Medicare Advantage. Según esta, la agencia ostenta jurisdicción para atender el cumplimiento de las disposiciones de la Ley de Pago Puntual sobre reclamaciones sometidas para dicho plan en apenas dos circunstancias:

1. Cuando las partes en el contrato hayan pactado expresamente adoptar la Ley de Pago Puntual para regir los procedimientos de pago de reclamaciones;

2. Cuando el contrato no contenga una cláusula sobre el pago puntual de reclamaciones (*prompt payment provision*), o cuando, a pesar de haberla, la cláusula no sea clara ni delimite con especificidad el término de tiempo en que el asegurador u organización de servicios de salud deberá pagar las reclamaciones de los proveedores.

C

El *Código de Seguros de Salud de Puerto Rico* fue creado mediante la Ley Núm. 194 de 29 de agosto de 2011, 26 LPRA sec. 9001, *et seq.*, con el fin de reglamentar de manera específica la industria de seguros de salud en Puerto Rico, la cual carecía de una estructura normativa definida dentro del Código de Seguros[23]. En ese sentido, las disposiciones del Código de Seguros de Salud fueron aprobadas con la intención de que fuesen complementadas por el Código de Seguros, en cuanto ambos cuerpos estatutarios no confligieran o fueran incompatibles entre sí. 26 LPRA sec. 9004.

Según su Exposición de Motivos, el Código de Seguros de Salud incide sobre numerosos aspectos de la industria de los seguros de salud, y persigue atender varias áreas de necesidad y de vital importancia para regular efectivamente la referida industria, como lo es el proceso de examen o auditoría de reclamaciones. A estos fines, la Asamblea Legislativa aprobó el Capítulo 6 del Código de Seguros de Salud (Capítulo 6). El referido capítulo se creó con el propósito de estandarizar las normas que rigen el proceso de las auditorías realizadas por los aseguradores

---

[23] Según la Exposición de Motivos de la Ley Núm. 194-2011, para ese momento, el Código de Seguros tan solo contenía una cantidad limitada de capítulos relacionados a la industria de seguros de salud, a saber: "el Capítulo 16, dedicado a los seguros de incapacidad física; el Capítulo 19, dedicado a las organizaciones de servicios de salud; el Capítulo 30, dedicado a requisitos de pago puntual a los proveedores de cuidado de salud; y el Capítulo 31, relacionado con la negociación colectiva entre planes médicos y proveedores".

sobre las reclamaciones por servicios de cuidado de salud que le son sometidas por los proveedores. 26 LPRA sec. 9082.

No obstante, este Código fue inicialmente aprobado con un lenguaje incierto y ambiguo en cuanto a la ejecución del recobro producto de dichas auditorías. Por ello, la Asamblea Legislativa enmendó el Capítulo 6 a través de la Ley Núm. 294 de 29 de diciembre de 2018, con el fin de preceptuar el proceso de los recobros producto de las auditorías que regula. De esta manera, se prohibió la práctica de descontar unilateralmente aquellas cantidades identificadas como recobrables, ya sea por pagos hechos en exceso o erróneamente, según se determinase como resultado del proceso de auditorías de reclamaciones.

Asimismo, la Asamblea Legislativa reconoció que, así como las aseguradoras tienen el deber de pagar las facturas por servicios de salud prestados en ciertos términos, los proveedores deben pagar dentro de un término establecido, y en una transacción por separado, aquellas cantidades que adeuden a las aseguradoras. Exposición de Motivos, Ley Núm. 294-2018.

Así las cosas, para efectos del Capítulo 6, la auditoría de reclamaciones es el proceso utilizado por las organizaciones de salud o por las aseguradoras para determinar si la información contenida en el expediente clínico del reclamante coincide con los servicios de cuidado de salud que figuran en la reclamación que les ha sido sometida por los proveedores, independientemente de la necesidad médica o de la razonabilidad de los cargos cobrados. 26 LPRA sec. 9083(b). A los fines de auditar los cargos facturados, las aseguradoras están facultadas para investigar que: (1) los cargos que figuran en la factura son correctos; (2) se prestaron los servicios según consta en los expedientes médicos u otros registros, y (3) los servicios fueron prestados según el plan de tratamiento de un médico. 26 LPRA sec. 9090(a).

Por lo tanto, y en lo pertinente a nuestra controversia, el Capítulo 6 dispone lo siguiente en cuanto a los remedios disponibles cuando se identifique una deuda como resultado del proceso de auditorías:

> Si durante la auditoría se identifica alguna cantidad debida por alguna de las partes, se pagará dicha cantidad dentro de un plazo razonable que no excederá sesenta (60) días de la fecha en que se completó la auditoría, salvo que las partes acuerden algún otro término. Se prohíbe la práctica de unilateralmente descontar de un próximo pago, la cantidad a recobrar como resultado del proceso de la auditoría. Pasados los sesenta (60) días de completarse el proceso de auditoría, la parte que resulte estar en deuda y que tenga que devolver dinero como producto de la auditoría, deberá someter dicho pago en una transferencia independiente y por separado. De lo contrario, **la cantidad adeudada estará sujeta a la compensación de deudas establecidas en las secs. 3221 a 3228 del Título 31**[24].

26 LPRA sec. 9091(c). (Énfasis nuestro).

III

Como adelantáramos, la controversia que nos ocupa se circunscribe a resolver si la OCS actuó correctamente en la interpretación de los estatutos previamente discutidos para determinar si ostentaba o no jurisdicción para atender la controversia presentada ante sí por Anestesia del Norte.

A tales efectos, la recurrente señala que la OCS erró al declararse sin jurisdicción para atender su solicitud de investigación, instada ante ella con el fin de objetar la determinación de Triple-S para recobrar lo pagado en las reclamaciones sometidas bajo los planes médicos de los Programas Federales, administrados por dicha aseguradora.

Alega que la agencia recurrida ostenta jurisdicción primaria exclusiva para investigar y resolver dicha objeción, pues entiende que se trata de un reembolso de reclamaciones no procesables. Insiste en que este proceso se encuentra regulado exclusivamente por las disposiciones del Capítulo 30 del Código de Seguros, según lo establecido por el Tribunal Supremo en *MCS Advantage v. Fossas Blanco et al.*, 211 DPR 135 (2023).

---

[24] Se trata de los Artículos 1149-1156 del Código Civil de Puerto Rico de 1930**,** 31 LPRA sec. 3221-3228 (derogadas). A esta fecha, el Código de Seguros de Salud no ha sido enmendado para actualizar las disposiciones citadas para conformarlas a las que establece el nuevo Código Civil de Puerto Rico de 2020, sobre la **compensación de deudas**, correspondientes a los Artículos 1144-1152, 31 LPRA sec. 9221-9229.

Adicionalmente, plantea que la OCS tiene jurisdicción sobre toda acción que ejerza una aseguradora contra un proveedor de servicios médicos, por ser esta la entidad encargada de fiscalizar la industria de seguros en Puerto Rico. Por tanto, arguye que cualquier restricción o limitación a dicha jurisdicción tiene que surgir expresamente de una legislación por vía de excepción[25]. En virtud de ello, aduce que el Código de Seguros no excluye las disposiciones del Capítulo 30 del Código de Seguros, por lo que ambos estatutos aplican conjuntamente.

Por su parte, la Comisionada de Seguros reitera la falta de jurisdicción de la OCS, debido a que la controversia planteada se rige por las disposiciones del Capítulo 6 del Código de Seguros de Salud, y no por el Capítulo 30 del Código de Seguros. Plantea que la solicitud de recobro de Triple-S surgió luego de haberse identificado ciertas discrepancias en la facturación de servicios por parte de Anestesia del Norte **como producto de una auditoría**, y no por el procesamiento del pago de las reclamaciones fundamentado en la Ley de Pago Puntual. Por tanto, sostiene que lo resuelto en *MCS Advantage v. Fossas Blanco* no resulta aplicable a la controversia que nos ocupa, ya que la suscitada en aquel caso se ventiló totalmente al amparo de la Ley de Pago Puntual.

Por otro lado, la Comisionada planteó que el ámbito de las disposiciones del Capítulo 6 del Código de Seguros de Salud abarca tanto el proceso de auditoría de reclamaciones, como la ejecución del recobro producto de dicho proceso. Por lo tanto, afirma que su determinación fue razonable y cónsona con el marco regulatorio aplicable; a decir, que la solicitud de Anestesia del Norte no se regía por la Ley de Pago Puntual, de manera que no se activó la jurisdicción original conferida por el Capítulo 30 del Código de Seguros.

---

[25] Adelantamos que este planteamiento no nos convence, en tanto nuestro ordenamiento jurídico establece todo lo contrario. Conforme a *MCS Advantage*, "la jurisdicción primaria exclusiva o jurisdicción estatutaria, se suscita en aquellos escenarios en que **una ley expresamente le confiere jurisdicción a una agencia administrativa para dilucidar determinada controversia en primera instancia**". *MCS Advantage v. Fossas Blanco et al.*, 211 DPR, a la pág. 147. (Énfasis nuestro).

Los argumentos esbozados por la Comisionada de Seguros nos resultan persuasivos.

Como discutimos, el Capítulo 30 del Código de Seguros regula primordialmente el pago expedito de las reclamaciones sometidas por el proveedor a la aseguradora —sean estas procesables o no—. Para lograr el cumplimiento efectivo de este objetivo, la Asamblea Legislativa expresamente le otorgó jurisdicción primaria a la Comisionada de Seguros para atender las controversias entre las aseguradoras y los proveedores al palio de la Ley de Pago Puntual.

Por su parte, el Capítulo 6 del Código de Seguros de Salud regula todo lo concerniente al proceso de auditoría de reclamaciones llevado a cabo por las aseguradoras para corroborar la información de las facturas que le son sometidas, así como el recobro resultante de dicho proceso. Para lograr esto último, este estatuto específicamente provee un término de sesenta (60) días para que el proveedor pague o reembolse a la aseguradora la deuda identificada en dicha auditoría. De lo contrario, la aseguradora puede ejercer su derecho a la compensación de deudas como remedio al impago, según establecido en las disposiciones pertinentes del Código Civil de Puerto Rico.

Anestesia del Norte insiste en que a esta controversia le es de aplicación la opinión del Tribunal Supremo en *MCS Advantage v. Fossas Blanco*, por lo que, según su interpretación, la OCS ostenta jurisdicción primaria exclusiva para atender su solicitud de investigación. No obstante, al examinar los hechos que generaron la controversia en este recurso y aquellos suscitados en la opinión citada, resulta meridianamente claro que los hechos son distinguibles.

En *MCS Advantage*, la propia aseguradora aseveró que la controversia "trataba de determinada acción de reembolso sobre reclamaciones no procesables pagadas a un proveedor bajo un plan Medicare Advantage". *MCS Advantage v. Fossas Blanco et al.*, 211 DPR, a la pág. 142. Es decir, esta reconoció la jurisdicción de la OCS para

entender en el asunto. "Ello, al solicitarle [al doctor Fossas Blanco] el reembolso de las reclamaciones presuntamente **pagadas en exceso al amparo de lo dispuesto en la Ley para el Pago Puntual de Reclamaciones** y la Regla 73 del Reglamento del Código de Seguros de Puerto Rico Núm. 6559 (Normas para Regular el Pago Puntual de Reclamaciones a los Proveedores de Servicios de Salud)." *MCS Advantage v. Fossas Blanco et al.*, 211 DPR, a las págs. 141-142. (Énfasis nuestro).

En contraste, en el caso de marras, Triple-S identificó una deuda por virtud de servicios facturados en contravención a las disposiciones contractuales pactadas entre las partes[26], según los hallazgos de su auditoría de las reclamaciones sometidas por Anestesia del Norte. Por ello, ejerció su derecho al recobro de la deuda reclamada conforme al Art. 6.110(c) del Código de Seguros de Salud[27], al notificarle a la recurrente que, transcurridos los sesenta (60) días sin que se recibiera pago alguno, procedería a compensar la deuda hasta saldar el sobrepago adeudado[28].

De igual manera, la agencia recurrida tampoco reconoció la aplicación del Capítulo 30 del Código de Seguros, sino que estableció desde un inicio que el procedimiento de recobro objetado se originó "como resultado de una auditoría de los servicios prestados a [los asegurados de Triple-S] del Plan Comercial [y los] asegurados de los Programas Federales"[29], lo cual reconoció como un asunto exclusivamente regulado por el Capítulo 6 del Código de Seguros de Salud[30].

Puntualizamos que las razones por las cuales Triple-S entendió procedente el recobro de las facturas auditadas surgieron del incumplimiento con las cláusulas contractuales pertinentes a quiénes podían facturar los servicios prestados; fundamento que no encuentra base

---

[26] *Véase*, apéndice del recurso, SUMAC TA, entrada núm. 10, págs. 7-11.

[27] 26 LPRA sec. 9091(c).

[28] *Véase*, Apéndice del recurso, SUMAC TA, entrada núm. 11, pág. 3.

[29] *Íd.*, entrada núm. 20, pág. 22.

[30] *Íd.*, págs. 24-28.

en ninguna de las circunstancias que facultan la impugnación del reembolso de un pago no procesable al amparo del Capítulo 30 del Código de Seguros y de la Regla 73 del Reglamento del mismo Código. Por consiguiente, estas disposiciones, así como la Carta Normativa Núm. 2010-110-PP, no son aplicables para arrogarle jurisdicción a la OCS sobre los recobros producto de auditorías, independientemente de si los mismos surgen de un plan regulado a nivel estatal o federal.

Asimismo, un análisis detenido de las disposiciones del mencionado Artículo 6.110 del Código de Seguros de Salud nos revela que los remedios que ofrece para recobrar el sobrepago solicitado —y no pagado oportunamente por el proveedor en deuda— como producto de una auditoría tienen que ser atendidos al amparo de nuestro Código Civil. Además, la auditoría realizada por Triple-S generó una acción a todas luces revestida de naturaleza contractual. Por consiguiente, opinamos que la controversia suscitada por el recobro iniciado al amparo de dicho estatuto debe atenderlo el foro con competencia, conforme a la teoría general de los contratos.

En ese sentido, no podemos sino concluir que la Comisionada de Seguros actuó correctamente al decretarse sin jurisdicción para atender las controversias sobre el recobro de las reclamaciones presentadas por Anestesia del Norte bajo los Programas Federales, por ser este un producto de la auditoría realizada por Triple-S al amparo del Capítulo 6 del Código de Seguros de Salud; el cual no puede ser complementado por el Capítulo 30 del Código de Seguros, debido a la disparidad en la naturaleza de los asuntos que regulan.

Ahora bien, no podemos obviar que, en su carta del 23 de diciembre de 2024, la OCS retuvo jurisdicción para continuar la evaluación de la solicitud de la recurrente en cuanto a las objeciones de las reclamaciones relacionadas al Plan Comercial de Triple-S. Sin embargo, a pesar de haber precisado las razones por las cuales no tenía jurisdicción para atender los asuntos relacionados a los Programas Federales, nada proveyó la agencia

recurrida para sustentar los motivos por los cuales decidió proseguir con el resto de lo planteado en la aludida solicitud de investigación.

Somos del criterio que tal determinación es incompatible con la estructura normativa previamente discutida, y firmemente argumentada por la propia recurrida en su recurso. Por lo tanto, colegimos que la OCS tampoco ostenta jurisdicción para atender las objeciones al recobro de las reclamaciones sometidas bajo el Plan Comercial, en la medida en que el reembolso del sobrepago efectuado por dicho concepto también se solicitó luego de la auditoría realizada por Triple-S al amparo del Capítulo 6 del Código de Seguros de Salud.

IV

Por virtud de lo antes expuesto, modificamos la *Resolución* recurrida para integrar la falta de jurisdicción de la OCS para intervenir y resolver la solicitud de investigación instada por Anestesia del Norte sobre el recobro del sobrepago efectuado por Triple-S en el Plan Comercial, tal como lo determinó sobre los planes médicos bajo los Planes Federales, por ser todo producto de una auditoria de reclamaciones. **Así modificada, confirmamos la determinación final de la Comisionada de Seguros**.

Notifíquese.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones